# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SNOW SHOE REFRACTORIES LLC, as Administrator of SNOW SHOE REFRACTORIES LLC PENSION PLAN FOR HOURLY EMPLOYEES, <br><br> Plaintiff. <br><br> v. <br><br> JOHN JUMPER, BRENT PORTERFIELD, AMERICAN INVESTMENTS FUND II, LLC, a Delaware limited liability company, and R. TRENT CURRY, <br><br> Defendants. | No. 4:16-CV-02116 <br><br> (Judge Brann) |

## MEMORANDUM OPINION

### FEBRUARY 21, 2019

Plaintiff Snow Shoe Refractories LLC ("Snow Shoe Refractories") as Administrator of Snow Shoe Refractories LLC Pension Plan for Hourly Employees ("Pension Plan") alleges that between 2015 and 2016, Defendant John Jumper with the assistance of Defendants Brent Porterfield and R. Trent Curry wrongfully embezzled and converted to their own use $5.7 million of the Pension Plan's funds.[1]

---

[1] Second Amended Complaint (ECF No. 95) at ¶ 36-43, 47-56, 62-69.

1

## I. BACKGROUND

### A. Alleged Facts[2]

Snow Shoe Refractories is a Delaware limited liability company with a principal place of business located in Snow Shoe, Centre County, Pennsylvania.[3] Snow Shoe Refractories is the administrator of Snow Shoe Refractories LLC Pension Plan for Hourly Employees ("Pension Plan").[4] R. Trent Curry is an individual who resides in Memphis, Tennessee.[5] Defendants Curry and Jumper are business partners and co-owners of Alluvion Investments, LLC.[6]

Snow Shoe Refractories alleges that in February 2007, Jumper convinced Brett Blair to buy Premier Refractories, Inc.;[7] Blair purchased the company, including the Pension Plan, and renamed the company Snow Shoe Refractories, LLC.[8] In May 2007, Jumper forged Blair's signature on a document purporting to be a resolution of the Snow Shoe Refractories Board designating Merrill Lynch Bank

---

[2] When considering a motion under Rule 12(b)(2), a court assumes the truth of all factual allegations made in the complaint and accepts disputed facts in the plaintiff's favor. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). The material in this section, then, is taken entirely from Snow Shoe Refractories' Second Amended Complaint and is presumed true for present purposes.

[3] *Id.* at ¶ 6.

[4] *Id.* at ¶ 6.

[5] *Id.* at ¶ 9.

[6] *Id.* at ¶ 15, 18.

[7] *Id.* at ¶ 19-23.

[8] *Id.* at ¶ 23.

& Trust Co FSB ("Merrill Lynch") as a non-discretionary directed trustee of the Pension Plan in place of Bank of America, the prior trustee.[9] Jumper continued to forge Blair's name on documents and to represent himself as the Vice President of Snow Shoe Refractories despite having no role in either the company or its corporate leadership.[10]

On February 23, 2015, Curry incorporated American Tubing Arkansas, LLC ("ATA").[11] On March 6, 2015 Defendants Jumper and Curry, together with other individuals, formed American Investments Fund I, LLC ("AIF I").[12] Several days later, on March 12, 2015, Jumper wrote a letter on Snow Shoe Refractories letterhead addressed to Merrill Lynch advising it that the Pension Plan intended to invest in a $3 million promissory note issued by AIF I.[13] Curry signed the letter as the vice president of Snow Shoe Refractories.[14]

Snow Shoe Refractories alleges that AIF I was a shell corporation with no assets which was effectively the alter ego of Jumper, Curry and Defendant Brent Porterfield.[15]

---

[9] *Id.* at ¶ 28.
[10] *Id.* at ¶ 30.
[11] *Id.* at ¶ 33.
[12] *Id.* at ¶ 10.
[13] *Id.* at ¶ 34.
[14] *Id.*
[15] *Id.* at ¶ 37.

On March 17, 2015, Jumper sent a copy of the $3 million promissory note to Merrill Lynch and instructed it to wire the $3 million from the Pension Plan to AIF I.[16] After receiving the $3 million, AIF I acquired Curry's company, ATA.[17] AIF I then remitted payments of more than $1 million to Jumper's company, Alluvion Securities, as a fee for orchestrating the acquisition of ATA.[18] Using the same scheme, Jumper made additional unauthorized withdrawals of $2 million and $700,000, respectfully, from the Pension Plan.[19] Snow Shoe Refractories does not allege that Curry was directly involved in these later transactions.

### B. Procedural History

Snow Shoe Refractories filed a Second Amended Complaint naming Curry as a defendant on October 31, 2018.[20] The Second Amended Complaint alleges eight counts, three of which relate to Curry. Count IV alleges conversion by Curry; Count V alleges aiding and abetting by Porterfield, Curry, and AIF II; and Count VII alleges unjust enrichment by Curry.

On November 16, 2018, Curry filed a Motion to Dismiss for lack of personal jurisdiction.[21] For the reasons that follow, the motion is denied.

---

[16] *Id.* at ¶ 40, 42.

[17] *Id.* at ¶ 43.

[18] *Id.* at ¶ 43.

[19] *Id.* at ¶ 47, 62.

[20] Second Amended Complaint (ECF No. 95).

[21] Defendant's Motion to Dismiss (ECF No. 98).

## II. DISCUSSION

### A. Standard of Review

When considering a motion to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2),[22] a court assumes the truth of all factual allegations in the Plaintiff's complaint and draws all inferences in favor of that party.[23] Once a defendant challenges a court's exercise of personal jurisdiction through a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction.[24] When a district court exercises its discretion not to hold an evidentiary hearing, a plaintiff need only plead a *prima facie* case of personal jurisdiction in order to survive a motion to dismiss.[25]

To determine jurisdictional questions, the court must also "accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor."[26] However, at no time may the plaintiff rely on "mere allegations" or "the bare pleadings alone," but "must respond with actual proofs" such as "sworn affidavits or other competent evidence."[27] A Rule 12(b)(2) motion to dismiss is "inherently a matter which requires resolution of factual issues outside

---

[22] Federal Rule of Civil Procedure 12(b)(2).

[23] *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

[24] *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

[25] *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d. 141, 142 n.1 (3d Cir. 1992).

[26] *Belden Tech., Inc. v. LS Corp.*, 626 F.Supp.2d 448, 453 (D. Del. 2009).

[27] *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

the pleadings, i.e. whether in personam jurisdiction actually lies."[28] Therefore, courts may rely on documents outside of the pleadings in considering a Rule 12(b)(2) motion.

> B. **Whether Plaintiff has Sufficient Alleged That This Court has Personal Jurisdiction over Defendant Curry**

The Court may "assert personal jurisdiction over a nonresident of [Pennsylvania] to the extent authorized by the law of [Pennsylvania]." The Pennsylvania long-arm statute provides jurisdiction over entities "to the fullest extent allowed under the Constitution of the United States."[29] The Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[30] Requiring minimum contacts with another state "provides fair warning to a defendant that he or she may be subject to suit in that state."[31] As noted above, Curry is a resident of Tennessee.

---

[28] *Id.*

[29] 42 Pa.C.S.A. § 5322(b).

[30] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).

[31] *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008).

There are two types of personal jurisdiction that the federal courts have recognized as comporting with the due process principles: general jurisdiction and specific jurisdiction.[32]

### 1. General Jurisdiction

General jurisdiction allows a court to "hear *any* claim against the defendant."[33] For a court to exercise general jurisdiction over a defendant, the plaintiff must prove that the defendant maintains systematic and continuous contact with the forum state.[34] When determining whether a court has general jurisdiction over an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile."[35]

Here, however, Snow Shoe Refractories does not argue that this Court has general jurisdiction over Curry. Accordingly, I am "free to consider solely whether the alternative form of personal jurisdiction is present: specific personal jurisdiction."[36]

---

[32] *Id.*

[33] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017)(emphasis in original).

[34] *See Helicopteros Nacionaltes de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & n. 9 (1984).

[35] *Bristol-Myers*, 137 S.Ct. at 1780.

[36] *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

## 2. Specific Jurisdiction

Specific jurisdiction exists when "the claim arises from or relates to conduct purposely directed at the forum state."[37] This determination requires a court to "examine the relationship among the defendant, the forum, and the litigation."[38] The exercise of specific jurisdiction over a defendant must satisfy the requirements of the Due Process Clause of the Fifth Amendment.[39] Particularly, "specific jurisdiction may be exercised only when the defendant has constitutionally sufficient 'minimum contacts' with the forum."[40] Requiring plaintiffs to establish that a nonresident defendant has minimum contacts with the state provides "fair warning" to a defendant that he or she may be subject to suit in that state.[41]

### i. *Specific Jurisdiction Traditional Analysis*

Determining whether there is specific jurisdiction requires a three-part inquiry.[42] First, the defendant must have "purposefully directed [its] activities" at the forum state.[43] Second, the plaintiff's claim must "arise out of or relate to" at least

---

[37] *Kehm Oil,* 537 F.3d at 300 (citing *Helicopteros*, 466 U.S. at 414-15 & n. 8.).

[38] *Pinker*, 292 F.3d at 368.

[39] *Pinker*, 292 F.3d at 368-69.

[40] *Burger King Corp., v. Rudzewics*, 471 U.S. 462, 474 (1985).

[41] *Kehm Oil,* 537 F.3d at 300.

[42] *Id*.

[43] *Burger King Corp. v. Rudzewics*, 471 U.S. 464, 472 (1985)(quotation marks omitted).

one of those specific activities.[44] Finally, courts may consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with fair play and substantial justice."[45] The first two prongs of the test "determine whether a defendant has the requisite minimum contacts in the forum State."[46] However, Snow Shoe Refractories does not, and need not, rely on the traditional three-step analysis to establish specific jurisdiction; it may, instead, rely on the distinct "effects test" established by the United States Supreme Court in *Calder v. Jones.*[47]

    ii.    *"Effects Test"*

*Calder* involved a California resident who sued two Florida residents in California for libel based on an article the two Florida residents published.[48] In finding that the Florida residents were subject to suit in California, that court explained "they knew [the article] would have a potentially devastating impact upon respondent. And they knew that the brunt of the injury would be felt by respondent in the State in which she lives and works and in which the [newspaper] has its largest

---

[44] *Helicopteros,* 466 U.S. at 414.
[45] *Burger King,* 471 U.S. at 476 (quotation marks omitted).
[46] *D'Jamoos*, 566 F.3d at 102.
[47] *Calder v. Jones*, 465 U.S. 783 (1984). *See also Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007).
[48] *Id.* at 784-85.

circulation."[49] The court concluded that these facts would warrant the Florida residents to "reasonably anticipate being haled into court" in California.[50]

Although the traditional specific jurisdiction analysis and the effects test are different, "they are cut from the same cloth."[51] The United States Court of Appeals for the Third Circuit has interpreted Calder's "effects test" to require the plaintiff to show:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.[52]

If the plaintiff can establish these three elements, "the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone . . . are far too small to comport with the requirements of due process' under our traditional analysis."[53] Still, both tests "require a similar type of

---

[49] *Id.* at 789-90.

[50] *Id.* at 790.

[51] *Marten,* 499 F.3d at 297.

[52] *Id.*

[53] *Id.* (citing *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

'intentionality' on the part of the defendant.[54] Thus, the "expressly aimed" element must be met before the first two elements may be considered.[55]

In order to satisfy the "expressly aimed" requirement, "the plaintiff must demonstrate 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'"[56] Here, Curry clearly knew or should have known that the Pension Plan would suffer the brunt of the harm caused by his tortious activities in Pennsylvania. This is evidenced by the fact that Curry signed the promissory note which was required to release the $3 million from the Pension Plan's trustee.[57] The Pension Plan's address, located in Pennsylvania, was expressly indicated in the first paragraph of the promissory note signed by Curry.[58] Curry was aware that the Pension Plan was located in Pennsylvania and that residents of Pennsylvania, Snow Shoe Refractories employees and retirees, would feel the harm of his tortious activities in Pennsylvania. Therefore, Curry expressly aimed his tortious conduct at Pennsylvania.

---

[54] *Id.* (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 n.6 (3d Cir. 2003).

[55] *Id.*

[56] *Id.* at 298 (citing *IMO Indus.*, 155 F.3d at 266).

[57] Promissory Note (ECF No. 103, Ex. J).

[58] *Id.*

Curry's action of signing the promissory note does more than just provide evidence of foreseeability of harm,[59] it shows that he "intentionally targeted and focused on the forum."[60] Curry could have obtained a promissory note from any number of entities, yet he specifically targeted the Pension Plan which he knew was located in Pennsylvania.

To obtain specific jurisdiction, the contacts need not be extensive, in fact, "[a] single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant."[61] In this matter, Curry's actions are sufficient to show that Curry expressly aimed his tortious conduct at Pennsylvania such that he should reasonably anticipate being haled into court in Pennsylvania. Having found that the third element of the effects test is satisfied, I may now consider the other two elements.

Turning to the first element, Snow Shoe Refractories alleges Curry committed the intentional torts of conversion and aiding and abetting. Snow Shoe Refractories again points to the $3 million promissory note from AIF I signed by Curry as

---

[59] *Marten*, 499 F.3d at 297 ("Even if a defendant's conduct could cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state.").

[60] *IMO Indus.*, 155 F.3d at 266.

[61] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004).

evidence of his involvement with the conversion of the Pension Plan's funds. Curry signed the promissory note in his corporate capacity as manager of AIF I.[62]

Curry contends that this Court cannot establish personal jurisdiction over him through his acts performed in his corporate capacity.[63] While generally true, an exception to this rule is that a "corporate agent may be held personally liable for torts committed in the corporate capacity," and the agent's actions can be sufficient to establish personal jurisdiction.[64] To determine whether personal jurisdiction should arise from a corporate officer's actions, courts consider: "(1) the officer's role in the corporate structure; (2) the quality of the officer's contacts; and (3) the extent and nature of the officer's participation in the alleged tortious conduct."[65]

Here, Curry was an owner and manager of AIF I.[66] Being mindful of the requirement that the Court must accept Snow Shoe Refractory's allegations as true for the purpose of this motion, I note that Curry acted to aid and abet Jumper in his scheme to deprive the Pension Plan of at least the first $3 million. Curry accomplished this by authorizing and approving the wrongful conversion of funds

---

[62] Promissory Note (ECF No. 103, Ex. J).

[63] *See Gentex Corp. v. Abbott*, 978 F.Supp.2d 391, 402 (M.D. Pa. 2013) ("Individuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts.").

[64] *Id.* (citing *Nat'l Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.*, 785 F.Supp. 1186, 1191 (W.D. Pa. 1992).

[65] *Id.*

[66] Second Amended Complaint (ECF No. 95) at ¶ 10.

by signing the promissory note.[67] The note was essential in order for the Pension Plan's trustee to release the funds to Curry's company, AIF I. Curry's actions are therefore sufficient to overcome the corporate shield, and he can be held personally liable for his actions in his corporate capacity.

Finally, there is no question that the Pension Plan felt the brunt of the harm in Pennsylvania. The $3 million was fraudulently taken from a pension plan located in Pennsylvania that provides retirement benefits for hourly employees also located in Pennsylvania. The second element of the effects test is consequently met. Having satisfied the effects test, I conclude that Snow Shoe Refractories has made a *prima facie* showing of this Court's specific jurisdiction over Curry.

### III. CONCLUSION

For the reasons discussed above, Defendant Curry's motion to dismiss is hereby **DENIED**.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[67] Promissory Note (ECF No. 103, Ex. J).