**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SNOW SHOE REFRACTORIES, LLC,<br>As Administrator of SNOW SHOE REFRACTORIES<br>LLC PENSION PLAN FOR HOURLY<br>EMPLOYEES, | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | |
| JOHN JUMPER, BRENT PORTERFIELD,<br>AMERICAN INVESTMENTS FUND II, LLC, and R.<br>TRENT CURRY, | ) <br> ) <br> ) | Case No.<br>4:16-CV-02116-MWB |
| Defendants/Third-Party Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | |
| MERRILL LYNCH BANK & TRUST CO., FSB, | ) <br> ) | |
| Third-Party Defendant. | ) | |

**<u>BRIEF IN SUPPORT OF THIRD-PARTY DEFENDANT MERRILL LYNCH
BANK & TRUST COMPANY, FSB'S MOTION TO DISMISS THE THIRD-PARTY
COMPLAINT FILED BY R. TRENT CURRY PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................ 5

STATEMENT OF QUESTIONS INVOLVED ................................................ 9

I.    DID CURRY NAME THE INCORRECT PARTY IN HIS THIRD-PARTY
      COMPLAINT AS THE ALLEGED EMPLOYER OF FINANCIAL
      ADVISOR G. CARROLL TODD, REQUIRING THE DISMISSAL OF
      THE THIRD-PARTY COMPLAINT? .................................................... 9

II.   CAN CURRY CURE THIS DEFECT IN THE THIRD-PARTY
      COMPLAINT TO ALLEGE A LEGALLY VALID CLAIM AGAINST
      ANY BANK OF AMERICA OR MERRILL LYNCH ENTITY? ......... 9

ARGUMENT AND AUTHORITIES ................................................................ 9

I.    CURRY NAMED THE INCORRECT PARTY IN HIS THIRD-PARTY
      COMPLAINT, THEREBY REQUIRING ITS DISMISSAL. ............ 10

II.   THE COURT SHOULD ORDER THE DISMISSAL OF THE
      THIRD-PARTY COMPLAINT WITHOUT LEAVE TO AMEND, AS
      CURRY CANNOT ASSERT A VALID CLAIM AGAINST ANY BANK
      OF AMERICA OR MERRILL LYNCH ENTITY. .............................. 11

      A.    No Claim Exists Against Mr. Todd's Employer, Merrill Lynch,
            Pierce, Fenner & Smith Incorporated. ....................................... 11

      B.    No Claim Exists Against MLBT Under ERISA or the Account
            Agreement. .................................................................................. 14

CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ................................................................................ 10

*Brandt v. Grounds*,
687 F.2d 895, 898 (7th Cir. 1982) ................................................................. 13

*Gobeille v. Liberty Mut. Ins. Co.*,
136 S.Ct. 936, 944 (2016).............................................................................. 11

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300, 319 (3d Cir. 2010) .................................................................. 10

*In re WorldCom, Inc. ERISA Litig.*,
354 F. Supp. 2d 423, 444 (S.D.N.Y. 2005) ............................................... 4, 15

*Ingersoll-Rand Co. v. McClendon*,
498 U.S. 133, 142 (1990) ............................................................................ 3, 11

*Moench v. Robertson*,
62 F.3d 553, 571 (3d Cir. 1995) ................................................................. 4, 15

*Renfro v. Unisys Corp.*,
671 F.3d 314, 321 (3d Cir. 2011) ............................................................. 13, 15

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85, 90 (1983) .................................................................................. 11

*Srein v. Frankford Trust Co.*,
323 F.3d 214, 222 (3d Cir. 2003) .................................................................. 13

*Watson v. Consol. Edison of N.Y.*,
594 F. Supp. 2d 399, 408-09 (S.D.N.Y. 2009).......................................... 3, 12

## STATUTES, RULES AND REGULATIONS

29 U.S.C. §§ 1001, *et seq.* ............................................................................. 3

29 U.S.C. § 1002(21)(A) ............................................................................. 4, 13

19 U.S.C. § 1004 ............................................................................................ 12

19 U.S.C. § 1005 ...................................................................................................... 12

29 U.S.C. § 1109 ........................................................................................................ 3

29 U.S.C. § 1132(a)(2) .............................................................................................. 3

29 U.S.C. § 1144(a) .................................................................................................. 10

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 8

**OTHER AUTHORITIES**

Third-Party Defendant Merrill Lynch Bank & Trust Co., FSB[1], hereby presents the following Brief in Support of its Motion to Dismiss the Third-Party Complaint filed by Defendant/Third-Party Plaintiff R. Trent Curry (Doc. 114) and requests that the Court issue an order dismissing this Third-Party Complaint (Doc. 114) in its entirety without leave to amend:

## INTRODUCTION

Third-Party Plaintiff R. Trent Curry ("Curry") filed his Third-Party Complaint against Merrill Lynch Bank & Trust Co., FSB ("MLBT") (Doc. 114) to allege causes of action for intentional/negligent misrepresentation and indemnification or contribution based solely on the premise that MLBT bears responsibility for the acts of non-party Financial Advisor G. Carroll Todd, Jr.   The Third-Party Complaint claims that this liability arises, because of MLBT's status as the employer of Mr. Todd.   (*See* Doc. 114 at ¶ 35).   However, in actuality, Mr. Todd works as an employee of a completely separate entity, Merrill Lynch, Pierce, Fenner & Smith Incorporated, a registered broker-dealer, not MLBT.   In fact, even Mr. Todd's publicly-available records demonstrate his employment by Merrill

---

[1] In 2009 Merrill Lynch Bank & Trust Co., FSB (a U.S.-based, federally chartered depository institution) merged with Bank of America, N.A.   Merrill Lynch Bank & Trust Co., FSB no longer operates as a separate depository institution.   Bank of America, N.A., responds to the Third-Party Complaint allegedly asserted against Merrill Lynch Bank & Trust Co., FSB.   Any references to Merrill Lynch Bank & Trust Co., FSB herein shall encompass its successor Bank of America, N.A.

Lynch, Pierce, Fenner & Smith Incorporated for his entire career as a Financial Advisor going back to 1983.   Curry simply failed to review the available records to identify the proper entity to name in this action.

Even if Curry had named the correct employer of Mr. Todd in the Third-Party Complaint, that pleading would still fail to allege a valid cause of action capable of granting relief to Curry.   The underlying case between Plaintiff Snow Shoe Refractories, LLC ("Snow Shoe") and Defendants John Jumper ("Jumper"), Brent Porterfield, American Investments Fund II, LLC, and Curry involves Jumper's allegedly unauthorized directions to MLBT to transfer funds held for the Snow Shoe Refractories LLC Pension Plan for Hourly Employees (the "Pension Plan") in 2015 and 2016 for use in investments identified by Jumper.   As conceded by the Second Amended Complaint filed by Snow Shoe (the current, operative pleading), Jumper submitted these directions based on his status as the Named Investment Fiduciary for the Pension Plan according to all documents provided to Bank of America, N.A. at the time and the applicable trust agreement for the Pension Plan's accounts. Jumper's status as the Named Investment Fiduciary provided him with the authority to direct *all* investments for the Pension Plan, and the terms of this arrangement, which made MLBT only the non-discretionary, directed Trustee for the Pension Plan's accounts, required MLBT to follow Jumper's instructions.   (*See* Doc. 95-2 at pp. 1, 5).   MLBT received "no discretionary control over, nor any other discretion

regarding, the investment or reinvestment of any asset of the [Pension Plan]." (*See* Doc. 95-2 at p. 5).

In order to salvage the Third-Party Complaint, Curry would need to identify a proper entity as the Third-Party Defendant and show that some liability arises from that entity's acts with respect to the three transactions at issue directed by Jumper. Neither the law applicable to defined employee benefit plans, nor the facts alleged in the pleadings to date, establish any liability for MLBT or Merrill Lynch, Pierce, Fenner & Smith Incorporated relating to these transactions. The Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA") provides the "uniform body of benefits law" that governs all claims relating to the Pension Plan. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990). ERISA specifically preempts state law claims relating to an employee pension plan, including fraud, breach of fiduciary duty, negligence, and breach of contract. *See Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 408-09 (S.D.N.Y. 2009). This federal preemption eliminates Curry's ability to assert a cause of action for fraud based on acts relating to administration of the Pension Plan.

Further, while ERISA establishes a right for a plan to assert a claim for breach of fiduciary duty against a plan fiduciary (*see* 29 U.S.C. § 1132(a)(2); 29 U.S.C. § 1109), Merrill Lynch, Pierce, Fenner & Smith Incorporated fails to qualify as a fiduciary. Only persons that possess discretionary authority or control over plan

management or assets qualify as fiduciaries under ERISA. 29 U.S.C. § 1002(21)(A). The terms of the trust agreement entered into by the Pension Plan, and incorporated into the Second Amended Complaint, required the Pension Plan to identify its own fiduciaries with this requisite discretion, authority and control. The Pension Plan consistently named Jumper as one of those fiduciaries, but it never named Merrill Lynch, Pierce, Fenner & Smith Incorporated. (*See* Docs. 95-2, 95-3, 95-4, 95-5, 95-6, and 95-17).

Although MLBT admittedly constitutes a fiduciary under ERISA, this fails to lead to any viable cause of action against MLBT for the conduct at issue either. As the non-discretionary, directed Trustee for the Pension Plan's accounts, MLBT possessed only limited duties for the Pension Plan, and ERISA does not expand those duties outside of those established in the applicable trust agreement. *In re WorldCom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423, 444 (S.D.N.Y. 2005); *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995). According to the applicable trust agreement, MLBT *had* to follow the instructions of the named fiduciaries for the Pension Plan, including investment directions from the Named Investment Fiduciary Jumper. (Doc. 95-2 at p. 5). According to the Second Amended Complaint, MLBT did just that by following the investment instructions it received for the three transactions at issue from Jumper, as required by the applicable account agreement. (*See* Doc. 95 at ¶¶ 36, 42, 47, 51-53, 62-63, 65, 68-69). Therefore,

MLBT fulfilled its obligations under the trust agreement and its limited duties under ERISA.   As the applicable trust agreement also holds MLBT entirely harmless for following the directions of a Named Investment Fiduciary, no liability can attach to MLBT's reliance on those instructions.   (Doc. 95-2 at pp. 7-8).

For all of these reasons, even if Curry received leave from this Court to amend his Third-Party Complaint to correct its current deficiencies, he cannot amend it to state a valid cause of action against MLBT or Mr. Todd's employer, and, therefore, MLBT respectfully requests that the Court dismiss Curry's Third-Party Complaint for failure to state a claim on which relief can be granted without any leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves claims between Plaintiff Snow Shoe, as Administrator of the Pension Plan, and various individuals and entities involved with investments for the Pension Plan directed by Jumper.   Jumper submitted a Defined Benefit Plan Institutional Trust Account Agreement (the "Account Agreement") for the Pension Plan to MLBT in May 2007.   (Doc. 95 at ¶ 29; Doc. 95-2).   The Second Amended Complaint incorporated that Account Agreement and included it as an exhibit thereto.   (*See* Doc. 95-2).   The Account Agreement established MLBT as the "non-discretionary directed Trustee" for the Pension Plan.   (*See* Doc. 95-2 at p. 1). It also required MLBT, as the non-discretionary directed Trustee, to "invest the

Trust Fund as directed by the Named Investment Fiduciary . . ." (*See* Doc. 95-2 at p. 5). MLBT's status as the non-discretionary directed Trustee provided it with "no discretionary control over, nor any other discretion regarding, the investment or reinvestement of any asset of the Trust." (*See* Doc. 95-2 at p. 5). Even further, the Account Agreement expressly provided that the Trustee "shall have no duty to inquire whether directions by the Employer, the Named Administrative Fiduciary, the Named Investment Fiduciary or any other person conform to the Plan, and the Trustee shall be fully protected in relying on any such direction . . ." (*See* Doc. 95-2 at p. 7).

Concurrently with the submission of the Account Agreement, Jumper submitted a Specimen Signature Document establishing himself as the Named Administrative Fiduciary and Named Investment Fiduciary for the Pension Plan. (*See* Doc. 95-17). Thereafter, between 2007 and 2016, Jumper submitted four, additional authorized signature forms to MLBT (or its successor Bank of America, N.A. ("BANA")) to identify the Named Investment Fiduciaries for the Pension Plan. (*See* Doc. 95 at ¶¶ 30-32; Docs. 95-3, 95-4, 95-5, and 95-6). All of these documents identified Jumper as a Named Investment Fiduciary. (*See* Docs. 95-3, 95-4, 95-5, and 95-6).

In 2015 and 2016, while acting as the Named Investment Fiduciary for the Pension Plan, Jumper directed BANA to conduct three transactions to transfer funds

outside of BANA for private investments identified by Jumper.  (*See* Doc. 95 at ¶¶ 36, 42, 47, 51-53, 62-63, 65, 68-69).   The funds transferred outside of BANA for these transactions totaled $5.7 million.  (*See id.*).  Jumper represented to BANA that the Pension Plan would use the first $3 million transferred out of BANA in March 2015 to purchase a promissory note issued by former defendant American Investments Fund I, LLC ("AIF I").  (Doc. 95 at ¶ 34; Doc. 95-9).   In November 2015 and February 2016, Jumper represented that the Pension Plan would use, respectively, $2 million and $700,000 to purchase promissory notes issued by Defendant American Investment Fund II ("AIF II").  (Doc. 95 at ¶¶ 51, 63, 68; Docs. 95-11, 95-12, and 95-15).

Snow Shoe CEO Brett Blair ("Blair") allegedly learned about the investments made by Jumper as the Named Investment Fiduciary for the Pension Plan in early 2016.  (Doc. 95 at ¶¶ 58, 71).   At that point, Blair started demanding that Jumper return all funds withdrawn from the Pension Plan's accounts to make the investments in AIF I and AIF II.  (Doc. 95 at ¶ 71).   Shortly thereafter, on October 20, 2016, Snow Shoe filed its initial Complaint in this case seeking to recover the funds transferred out of the Pension Plan's accounts by Jumper.  (Doc. 1).   This Complaint named Jumper, Brent Porterfield, AIF I, AIF II, and American Tubing Arkansas as defendants.  (Doc. 1).   Thereafter, Snow Shoe faced challenges to the sufficiency of this pleading and entered a settlement with American Investment

Funds I and American Tubing Arkansas, leading to two amendments to the Complaint and making the current, operative pleading the Second Amended Complaint.  (Doc. 95).  The Second Amended Complaint, filed on October 31, 2018, only names Jumper, Brent Porterfield, AIF II, and Curry as defendants. (Doc. 95).  In November 2017, Snow Shoe also filed a FINRA arbitration claim against Merrill Lynch, Pierce, Fenner & Smith Incorporated that currently remains pending.

On March 22, 2019, Curry filed a Third-Party Complaint against MLBT. (Doc. 144).   This Third-Party Complaint asserts causes of action against MLBT for intentional/negligent misrepresentation and contribution/indemnity.   (*See* Doc. 144 at pp. 5-6).   It focuses these causes of action on alleged acts by a Financial Advisor named G. Carroll Todd, Jr., who the Third-Party Complaint identifies as an employee of MLBT.   (*See* Doc. 144 at ¶¶ 5-10, 15, 30-33, 35-40).   For example, the Third-Party Complaint states that Mr. Todd "represented, through his statements, acts and omissions, that Defendant Jumper had the authority to make investment decisions on behalf of the Pension Plan."  (*See* Doc. 144 at ¶ 31).   It further states that, as a result of and in reliance on such alleged statements, "Curry agreed to allow investment of the Pension Plan's funds into AIF I."   (*See* Doc. 144 at ¶ 32).

Contrary to the assertions in the Third-Party Complaint, Mr. Todd works as a Financial Advisor for the broker-dealer Merrill Lynch, Pierce, Fenner & Smith Incorporated.  (*See* Exhibit 1, Todd FINRA BrokerCheck Report).  In fact, Mr. Todd has worked for Merrill Lynch, Pierce, Fenner & Smith Incorporated continuously since 1983.  (*See* Exhibit 1, Todd FINRA BrokerCheck Report). MLBT did not employ Mr. Todd at the time of the transactions at issue in 2015 and 2016.  (*See* Exhibit 1, Todd FINRA BrokerCheck Report).  This makes the key assumption of the Third-Party Complaint (that MLBT bears responsibility for acts of its alleged employee Mr. Todd) factually incorrect requiring its dismissal.

## STATEMENT OF QUESTIONS INVOLVED

I.    **DID CURRY NAME THE INCORRECT PARTY IN HIS THIRD-PARTY COMPLAINT AS THE ALLEGED EMPLOYER OF FINANCIAL ADVISOR G. CARROLL TODD, REQUIRING THE DISMISSAL OF THE THIRD-PARTY COMPLAINT?**

II.   **CAN CURRY CURE THIS DEFECT IN THE THIRD-PARTY COMPLAINT TO ALLEGE A LEGALLY VALID CLAIM AGAINST ANY BANK OF AMERICA OR MERRILL LYNCH ENTITY?**

## ARGUMENT AND AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) allows for a dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Courts evaluating the sufficiency of a complaint under this Rule "must look beyond conclusory statements and determine whether the complaint's well-pled factual allegations, taken as true, are 'enough to raise a right to relief

above the speculative level.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   The factual allegations of the pleadings on file in this case, when taken as true, conclusively establish that no claim exists against MLBT, or any other associated entity.

## I.     CURRY NAMED THE INCORRECT PARTY IN HIS THIRD-PARTY COMPLAINT, THEREBY REQUIRING ITS DISMISSAL.

Curry filed his Third-Party Complaint against MLBT.   This Third-Party Complaint alleges that MLBT "**through its employee Todd**, intentionally, negligently or with reckless disregard for the truth made representations, through statements, acts and omissions . . " concerning the authority of Defendant Jumper to manage, invest, withdraw and otherwise control the assets of the Pension Plan and to specifically invest funds from the Pension Plan into American Investment Fund I. (Doc. 114 at ¶ 35 (emphasis added)).   As Mr. Todd works as a Financial Advisor in the securities industry, publicly-available records provide the history of his employment.   These records show that Merrill Lynch, Pierce, Fenner & Smith Incorporated employs Mr. Todd, not MLBT.   (*See* Exhibit 1, Todd FINRA BrokerCheck Report).   This fact makes the entire premise underlying Curry's Third-Party Complaint, i.e. that an employee of MLBT made alleged misrepresentations to him, incorrect.   Furthermore, as already noted, MLBT merged with Bank of America, N.A. in 2009 and currently does not operate as a

separate depository institution.   As Curry named the incorrect party in his Third-Party Complaint, MLBT requests that the Court grant this Motion and dismiss this Third-Party Complaint.

## II.   THE COURT SHOULD ORDER THE DISMISSAL OF THE THIRD-PARTY COMPLAINT WITHOUT LEAVE TO AMEND, AS CURRY CANNOT ASSERT A VALID CLAIM AGAINST ANY BANK OF AMERICA OR MERRILL LYNCH ENTITY.

### A.   No Claim Exists Against Mr. Todd's Employer, Merrill Lynch, Pierce, Fenner & Smith Incorporated.

MLBT anticipates Curry to request leave to amend the Third-Party Complaint to rectify his failure to name the proper party.   However, as discussed below, Curry cannot cure the deficiencies in the Third-Party Complaint to assert a valid claim. Therefore, the Court should deny any request for leave to amend.

### 1.   ERISA Preempts Any State Law Claims Relating to the Pension Plan.

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]"   29 U.S.C. § 1144(a).   Express preemption serves the purpose of ERISA to "promote the interests of employees . . . in employee benefit plans," *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)), by ensuring a "uniform body of benefits law" that "minimize[s] the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government."   *Ingersoll-Rand Co.*, 498 U.S. at 142; *see also Gobeille*

11

*v. Liberty Mut. Ins. Co.,* 136 S.Ct. 936, 944 (2016).   Courts regularly find that ERISA expressly preempts state common law claims such as breach of fiduciary duty, negligence, and breach of contract arising out of the administration of an employee benefit plan, including investment-related administration of a pension plan fund held by a directed trustee.   *See Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 408-09 (S.D.N.Y. 2009) (ERISA expressly preempts fraud and breach of fiduciary duty claims premised on fiduciaries' misconduct in administering ERISA plan).

Here, the Pension Plan qualifies as an employee benefit plan subject to the provisions of ERISA.   (*See* Doc. 95 at ¶ 5).   In fact, the Second Amended Complaint asserts a claim for breach of fiduciary duty against Jumper in accordance with ERISA due to his status as the "fiduciary" for the Pension Plan.   (*See* Doc. 95 at ¶¶ 80).   As ERISA governs the administration of the Pension Plan, it also preempts any state law claims relating to the Pension Plan, including the causes of action contained in the Third-Party Complaint.   Since ERISA preempts Curry's alleged causes of action against any party (whether MLBT or Merrill Lynch, Pierce, Fenner & Smith Incorporated), the entire Third-Party Complaint requires dismissal.

### 2.   Curry Also Cannot Assert a Valid Claim Against Merrill Lynch, Pierce, Fenner & Smith Incorporated Under ERISA.

Curry also cannot reformulate the Third-Party Complaint to allege a cause of action against Merrill Lynch, Pierce, Fenner & Smith Incorporated based on ERISA.

12

ERISA "requires each plan to have one or more named fiduciaries that are granted the authority to manage the operation and administration of the plan." *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011). ERISA also specifically defines the term "fiduciary" for its purposes. 29 U.S.C. § 1002(21)(A). A person constitutes a fiduciary with respect to a plan if

> (i)  he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

29 U.S.C. § 1002(21)(A). As indicated in this definition, an entity only acts as a fiduciary to the extent it possesses authority or discretionary control over a plan. *Renfro*, 671 F.3d 314, 321 (3d Cir. 2011). A financial institution that acts strictly as a depository for funds for a plan by providing accounts to hold the funds does not qualify as an ERISA fiduciary under this standard. *See Srein v. Frankford Trust Co.*, 323 F.3d 214, 222 (3d Cir. 2003); *see also Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982) (non-trustee bank acting as custodian of funds not liable for failing to prevent embezzlement by plan trustee).

In this situation, neither Merrill Lynch, Pierce, Fenner & Smith Incorporated nor its employee, Mr. Todd, exercised discretionary control or authority over plan management or plan assets. The Account Agreement provided this discretion and

control to the Pension Plan's Named Administrative and Investment Fiduciaries and specifically identified these roles as fiduciaries within the meaning of ERISA. (Doc. 95-2 at pp. 2, 5).   The Account Agreement also expressly barred MLBT, as Trustee for the Pension Plan, and Merrill Lynch, Pierce, Fenner & Smith Incorporated from serving as either a Named Administrative Fiduciary or a Named Investment Fiduciary.   (Doc. 95-2 at p. 2).   True to this requirement, Snow Shoe identified a range of its own representatives, agents, and employees to serve as the Named Administrative Fiduciary and Named Investment Fiduciary between 2007 and 2016, most notably Jumper, but it never named Mr. Todd or Merrill Lynch, Pierce, Fenner & Smith Incorporated to one of these roles.   (*See* Docs. 95-3, 95-4, 95-5, 95-6, and 95-17).   Without this discretionary authority or control, neither Merrill Lynch, Pierce, Fenner & Smith Incorporated nor Mr. Todd qualifies as a fiduciary under ERISA.

### B.    No Claim Exists Against MLBT Under ERISA or the Account Agreement.

### 1.   The Allegations in the SAC Establish That MLBT Complied With Its Limited Duties Imposed Under ERISA.

To the extent Curry attempts to cure the defects in his Third-Party Complaint by alleging some liability arises from MLBT's own acts, rather than the acts of Mr. Todd, no such liability extends to MLBT based on the facts asserted in current pleadings.   While MLBT qualifies as a fiduciary under ERISA, its role as

non-discretionary, directed Trustee under the Account Agreement greatly limited its obligations and duties.   An ERISA fiduciary must exercise a "prudent man standard of care."   29 U.S.C. § 1104(a), 1105(a).   A directed trustee of a benefit plan "ow[es] fiduciary duties [only] with respect to the limited authority and discretion it exercises."   *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011).   This translates into a narrow fiduciary responsibility that requires the following of "those directions of a named fiduciary that are 'proper' and not 'contrary to' ERISA."   *In re WorldCom*, 354 F. Supp. 2d at 444 (quoting 29 U.S.C. § 1103(a)).   The trust agreement sets the terms under which the directed trustee accepts and executes directions it receives.   *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995).   At most, a directed trustee has a duty to question directions from a named fiduciary only if the trustee possesses material, non-public information suggesting the direction is contrary to ERISA or violates the named fiduciary's obligations.   *In re WorldCom*, 354 F. Supp. 2d at 445-47.

In this case, the Account Agreement expressly establishes MLBT as a non-discretionary, directed Trustee.   (Doc. 95-2 at p. 1).   As such, ERISA imposes only limited duties on MLBT despite its status as an ERISA fiduciary.   For investment decisions, MLBT had to follow the directions of the Named Investment Fiduciary unless it possessed some material information suggesting the fiduciary's direction violated ERISA or the fiduciary's obligations.   *In re WorldCom*, 354 F.

15

Supp. 2d at 445-47; (Doc. 95-2 at p. 5).   The Second Amended Complaint demonstrates that MLBT did, in fact, follow the directions from the Named Investment Fiduciary, Jumper, for all three transactions at issue in the Second Amended Complaint and that the available documentation in MLBT's possession identified Jumper as the Named Investment Fiduciary.   (*See* Doc. 95 at ¶¶ 36, 42, 47, 51-53, 62-63, 65, 68-69; Docs. 95-3, 95-4, 95-5, 95-6, and 95-17).   No alleged facts show the presence of any information in MLBT's possession that called Jumper's status as the Named Investment Fiduciary into question until after the transactions at issue.   By following the investment directions from a Named Investment Fiduciary, MLBT complied with its duties under ERISA.   ERISA did not require MLBT to question these directions, and it did not expand the liability of this non-discretionary, directed Trustee outside of the scope of its limited duties established in the Account Agreement.

> **2.  The Account Agreement Further Establishes that No Liability Exists for MLBT's Compliance with the Directions of Snow Shoe's Named Investment Fiduciary.**

By its express terms, the Account Agreement also rejects the imposition of any liability to MLBT for following the instructions of a Named Investment Fiduciary.   In its provision on Investment Directions, the Account Agreement states that the Trustee:

> (a) shall have no liability for its or any other person's following such directions or failing to act in the absence of any such directions; (b)

> shall have no liability for the acts or omissions of any person directing
> the investment or reinvestment of Trust Fund assets or making or
> failing to make any direction referred to in Section 5.03; and (c) shall
> have no duty or obligation to review any such investment or other
> direction, act or omission or, except upon receipt of a proper direction,
> to invest or otherwise manage any asset of the Trust which is subject to
> the control of any such person . . .

(Doc. 95-2 at p. 6).   In another provision concerning the "Trustee's Reliance", the

Account Agreement states that the Trustee "shall have no duty to inquire whether

directions by the Employer, the Named Administrative Fiduciary, the Named

Investment Fiduciary or any other person conform to the Plan, and the Trustee shall

be fully protected in relying on any such direction . . . from any person who the

Trustee reasonably believes is a proper person to give the direction."   (Doc. 95-2 at

p. 7). Further, the Account Agreement provides that the Employer (i.e. Snow Shoe)

shall indemnify and hold the Trustee "harmless from, any and all loss, claims,

liability, and expenses, including reasonable attorneys' fees imposed upon the

Trustee or incurred by the Trustee as a result of any acts taken . . . in accordance with

the directions from the . . . Named Investment Fiduciary . . ."   (Doc. 95-2 at p. 8).

Curry's ability to assert a valid cause of action for contribution or indemnity

against MLBT requires a showing that some sort of liability attaches to the conduct

of MLBT in this situation.   Based on the facts alleged, the Account Agreement

protects MLBT from any liability whatsoever for following the investment

directions for the Pension Plan from Jumper, the Named Investment Fiduciary.

17

This establishes that no liability arises due to MLBT's reliance of the investment instructions from Jumper, and, therefore, no potential liability on the part of MLBT supports an alleged claim for indemnification or contribution.

## CONCLUSION

For all of the reasons discussed herein, Third-Party Defendant Merrill Lynch Bank & Trust Co., FSB respectfully requests that the Court grant its Motion to Dismiss the Third-Party Complaint filed by Curry pursuant to Federal Rule of Civil Procedure 12(b)(6) and issue an order dismissing that Third-Party Complaint without leave to amend.

DATED:   May 2, 2019

/s/ *James K. Haney*
James K. Haney
WONG FLEMING
1500 Market St., 12 Floor, East Tower #1053
Philadelphia, PA   19102
(215) 546-2776
(215) 546-3206 (facsimile)
JHaney@wongfleming.com

And

Bruce W. Day*
Jennifer N. Lamirand
CROWE & DUNLEVY, P.C.
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
(405) 235-7700
(405) 239-6651 (facsimile)
bruce.day@crowedunlevy.com
jennifer.lamirand@crowedunlevy.com

ATTORNEYS FOR THIRD-PARTY
DEFENDANT MERRILL LYNCH BANK
& TRUST CO., FSB

*Application for Admission *Pro Hac Vice* Pending

18