# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SNOW SHOE REFRACTORIES LLC, as Administrator of the SNOW SHOE BENEFICIARIES LLC PENSION PLAN FOR HOURLY EMPLOYEES, | No. 4:16-CV-02116 |
| | (Judge Brann) |
| Plaintiff. | |
| v. | |
| JOHN JUMPER, BRENT PORTERFIELD, AMERICAN INVESTMENT FUNDS II, a Delaware limited liability company, and R. TRENT CURRY, | |
| Defendants. | |
| R. TRENT CURRY, | |
| Third-Party Plaintiff. | |
| v. | |
| MERRILL LYNCH BANK & TRUST CO., FSB, | |
| Third-Party Defendant. | |

## MEMORANDUM OPINION

### OCTOBER 4, 2019

Plaintiff Snow Shoe Refractories, LLC ("Snow Shoe") is the administrator of the Snow Shoe Refractories, LLC Pension Plan for Hourly Employees (the "Pension Plan"). Plaintiff alleges that in 2007 defendant John Jumper, an investor,

entered into contracts with third-party defendant Merrill Lynch Bank & Trust Company, FSB ("Merrill Lynch"), purportedly on Snow Shoe's behalf. These contracts designated Merrill Lynch as a non-discretionary directed trustee of the Pension Plan. Snow Shoe claims that Jumper did not have the authority to enter into these contracts.[1]

Now R. Trent Curry, another investor and one of Jumper's business partners, brings a third-party complaint against Merrill Lynch.[2] Curry alleges Merrill Lynch's intentional or negligent misrepresentation and asks the Court to order Merrill Lynch to provide contribution and/or indemnification should a judgment ultimately be rendered for Snow Shoe against Curry.

Merrill Lynch has moved to dismiss for failure to state a claim.[3] For the following reasons, that motion is granted. The Court dismisses Curry's indemnification and contribution claims with prejudice and dismisses Curry's intentional/negligent misrepresentation claim with leave to amend.

---

[1] For more facts on the central underlying dispute between Snow Shoe and Jumper and the other investors, reference Snow Shoe's Second Amended Complaint, ECF No. 95, and the Court's Memorandum Opinion denying Curry's earlier Motion to Dismiss, ECF No. 105.

[2] ECF No. 136—technically, Curry's amended third-party complaint.

[3] ECF No. 142.

## I. BACKGROUND

### A. Alleged Facts[4]

#### 1. G. Carroll Todd, John Jumper, and Merrill Lynch

G. Carroll Todd is an individual residing in Memphis, Tennessee.[5] He is a childhood friend of Jumper, and the two have interacted on a regular basis both socially and professionally.[6] Between 2015 and 2017, Todd acted as the liaison between Merrill Lynch and Jumper in connection with the investments of the Pension Plan's funds that Jumper was making at that time.[7] Jumper paid Todd to manage and allocate the Pension Plan's funds.[8]

Merrill Lynch led Curry to believe that Todd had the authority to manage, control, and invest the Pension Plan's funds.[9] Todd never acted outside the authority that Merrill Lynch had created,[10] and Merrill Lynch never acted to correct this or stated that Todd did not have this authority.[11]

---

[4] When considering a motion to dismiss for failure to state a claim, the Court "accept[s] as true all plausible facts alleged in [the plaintiff's] complaint and draw[s] all reasonable inferences in her favor," "constru[ing] the complaint in the light most favorable to [her.]" *Bagic v. Univ. of Pittsburgh*, 773 F. App'x 84, 87 (3d Cir. 2019) (citations omitted). This section's material is therefore drawn from Curry's Amended Third-Party Complaint, ECF No. 136, and the Court accepts it as true for present purposes (with the exception of legal conclusions).

[5] ECF No. 136 at ¶ 5.

[6] *Id.* at ¶ 13.

[7] *Id.* at ¶ 12.

[8] *Id.* at ¶ 28.

[9] *Id.* at ¶ 9.

[10] *Id.* at ¶ 10.

[11] *Id.* at ¶ 11.

Merrill Lynch also, directly or through Todd, acted as though Jumper had the authorization of the Pension Plan and of Merrill Lynch to invest the Pension Plan's funds.[12] Todd further represented to Curry that Jumper had the authority to make investment decisions on behalf of the Pension Plan.[13]

Jumper and Todd would communicate often about the investment and transfer of the Pension Plan funds.[14] Jumper often contacted Todd in order to get Todd's permission to sell Pension Plan assets (such as mutual funds and ETFs) for cash so that Pension Plan funds could be invested into outside companies.[15] Curry understood that the agreed upon and required protocol required Jumper to get Todd's permission before investing, withdrawing or otherwise handling the Pension Plan's funds.[16]

### 2. The $3 Million Investment into American Investment Funds I

In or about 2015, Jumper advised Curry that he intended to invest $3 million of Pension Plan funds into American Investment Funds I, LLC ("AIF I") to try and increase the Pension Plan's returns.[17] Jumper represented to Curry that he was the Pension Plan's sole trustee/manager and thus had the authority to invest the

---

[12] *Id.* at ¶ 29.

[13] *Id.* at ¶ 34.

[14] *Id.* at ¶ 23.

[15] *Id.* at ¶ 24.

[16] *Id.* at ¶ 25.

[17] *Id.* at ¶¶ 12, 14.

Pension Plan's funds, which at this time were deposited with Merrill Lynch.[18] Todd then sent Curry several communications about the intended investment and discussed selling Pension Plan assets to raise cash, which would then be transferred from Merrill Lynch to AIF I.[19]

Merrill Lynch then sold the requisite Pension Plan assets.[20] Jumper, via Todd, provided Curry with a Merrill Lynch Pension Plan account statement to prove that Merrill Lynch had the cash on hand to invest in AIF I.[21] And Todd, via Jumper, provided Curry with instructions on implementing a wire transfer so that the newly freed up Pension Plan funds could move from Merrill Lynch to AIF I.[22] Merrill Lynch then approved the wire transfer of the Pension Plan's funds from Merrill Lynch to AIF I.[23] Merrill Lynch knew that Pension Plan funds were being invested into AIF I.[24]

Throughout all of this, Todd's statements, acts and omissions gave Curry the impression that Jumper had the authority to invest Pension Plan funds into AIF I.[25] Neither Todd, nor anyone at Merrill Lynch, ever advised Curry that (a) the Pension

---

[18] *Id.* at ¶¶ 15-16.
[19] *Id.* at ¶¶ 17-18.
[20] *Id.* at ¶ 19.
[21] *Id.* at ¶¶ 26-27.
[22] *Id.* at ¶ 20.
[23] *Id.* at ¶ 21.
[24] *Id.* at ¶ 22.
[25] *Id.* at ¶ 30.

Plan did not authorize the investment of its funds into AIF I; (b) Jumper was not the Pension Plan's trustee; and (c) Jumper did not have the authority to invest the Pension Plan's funds into AIF I.[26] Todd represented to Curry that the $3 million investment of the Pension Plan's funds into AIF I was authorized by both the Pension Plan and by Merrill Lynch.[27]

As a result of, and in reliance on, Todd's and Merrill Lynch's representations, Curry agreed to allow investment of the Pension Plan's funds into AIF I, and, acting as Manager of AIF I, executed a promissory note from AIF I to the Pension Plan to reflect the terms of the Pension Plan's investment into AIF I.[28]

## II. DISCUSSION

Merrill Lynch offers a host of arguments why Curry's case should be dismissed. First, Merrill Lynch argues that as it no longer operates (it merged with Bank of America, N.A.), Curry has named the wrong party in his suit. Second, Merrill Lynch argues that ERISA preempts Curry's claims. Third, Merrill Lynch argues that it cannot be held responsible for Todd's actions, as Todd was not its agent. Fourth, Merrill Lynch argues that Curry's claims lack the required specificity. Fifth, Merrill Lynch argues that under ERISA, Merrill Lynch had very

---

[26] *Id.* at ¶ 31-32.

[27] *Id.* at ¶ 33.

[28] *Id.* at ¶ 35-36.

limited fiduciary duties; as it followed these duties, Curry's claims are misplaced.[29] And sixth, Merrill Lynch argues that Curry cannot seek indemnification or contribution from Merrill Lynch because Merrill Lynch is shielded from liability by its account agreement with Snow Shoe.

### A. Curry's Targeting of This Lawsuit

Merrill Lynch appears to argue that because it merged with Bank of America, N.A., and no longer operates as a freestanding depository institution,[30] Curry's case should be dismissed because Curry's case is aimed at "Merrill Lynch Bank & Trust Co., FSB," and not at Bank of America. Curry does not contest this argument.[31]

Given Merrill Lynch's substantive motion to dismiss, this is a "misnomer" case: "the plaintiff has actually sued and served the correct party, the party he intends to sue, but merely mistakenly has used the wrong name of the defendant in the caption of the complaint."[32] Thus, Merrill Lynch's motion to dismiss is

---

[29] As this argument hinges on Merrill Lynch's main preemption argument, the Court does not discuss it on a separate basis in this memorandum opinion.

[30] ECF No. 143 at 1 n.1. It is difficult for the Court to discern Merrill Lynch's exact argument.

[31] ECF No. 144.

[32] *Munetz v. Eaton Yale & Towne, Inc.*, 57 F.R.D. 476, 479 (E.D. Pa. 1973); *see also Flynn v. Best Buy Auto Sales*, 218 F.R.D. 94, 97 (E.D. Pa. 2003) ("The 'misnomer' rule operates in cases where a plaintiff has actually sued and served the correct party but has mistakenly used the wrong name of the defendant in the original caption.") (citing *Munetz*); *Shoap v. Kiwi S.A.*, 149 F.R.D. 509, 511 (M.D. Pa. 1993).

granted,[33] but Curry has leave to amend his complaint.[34] His amended complaint will relate back to the date of his original pleading. *See* Fed. R. Civ. P. 15(c)(1)(C).

To give the parties firmer intellectual footing moving forward in this litigation, the Court proceeds with the rest of Merrill Lynch's arguments as if Curry's case had not been dismissed on misnomer grounds.

### B. Preemption

Merrill Lynch argues that Curry's state law claims of misrepresentation, contribution and indemnity are expressly preempted by the Employee Retirement Income Security Act, or ERISA.[35] ERISA's express preemption provision, 29 U.S.C. § 1144(a), provides that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [under ERISA.]" The Supreme Court of the United States has held that a law "relates to" an employee benefit plan if it has a connection with or reference to such a plan, even if it was not designed to affect such plans or does so only indirectly. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). "Congress enacted ERISA to protect the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee

---

[33] *See Lampon-Paz v. Office of Pers. Mgmt.*, No. CV 15-5835 (KM), 2016 WL 1337556, at *1 (D.N.J. Apr. 4, 2016) (dismissing complaint for failure to name the correct party).

[34] *See Trautman v. Lagalski*, 28 F. Supp. 2d 327, 329 (W.D. Pa. 1998) ("Under Pennsylvania law, [i]f an amendment constitutes a simple correct[ion] of the name of a party, it should be allowed.") (citation omitted) (quoting *Wicker v. Esposito*, 457 A.2d 1260 (Pa. 1983).

[35] *See* ECF No. 143 at 11-12.

benefit plans and to provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts. The purpose of ERISA is to provide a uniform regulatory regime over employee benefits plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotations and citations omitted).

Curry claims that Merrill Lynch made certain misrepresentations that Curry then relied on in agreeing to allow the $3 million investment from the Pension Plan to AIF I, and in executing a promissory note associated with this investment.[36] Here there is no danger of disrupting the substantive regulatory requirements and uniform regime that Congress has set in place with ERISA. Curry's claims do not relate to the mechanics of ERISA plans, the benefits that they afford to plan participants, or the associated reporting, funding, and administrative requirements that Congress has mandated. Indeed, Curry could have brought an equivalent action, in response to an equivalent transfer, against any bank holding an equivalent amount of assets.

In *National Security Systems, Inc. v. Iola*, the United States Court of Appeals for the Third Circuit found that certain misrepresentations "made about an ERISA plan before that plan's existence" were "not premised on a challenge to the actual administration of the plan" and that a reviewing court's analysis of such misrepresentations would hinge "on legal duties generated outside the ERISA context." As well, the associated claims did not "strike at that area of core ERISA

---

[36] *See* ECF No. 136 at ¶¶ 137-47.

concern—funding, benefits, reporting, and administration." For these reasons, the Third Circuit held that the claims associated with these misrepresentations were not preempted by ERISA. *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 84 (3d Cir. 2012) (internal citations omitted).

Though here, Curry is obviously making his claims at a point in time when an ERISA plan does exist, the character of Merrill Lynch's alleged misrepresentations hews to the misrepresentations that the Third Circuit analyzed in *Iola*. As Curry's claims do not relate to an ERISA employee benefit plan, they are not preempted. 29 U.S.C. § 1144(a); *see also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d at 84-85.[37]

---

[37] *See also E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008) (misrepresentation claim was not preempted; "the employees are not claiming that [the employer] improperly administered an ERISA plan" and "the employees' claims will [likely not] require inquiry into the terms of an ERISA plan"); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 864 (6th Cir. 2007) (misrepresentation claims not preempted as they did not depend on an interpretation of the given plan or concern the ERISA benefit scheme); *McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996) (negligent misrepresentation claim was not preempted by ERISA because it was "a tort action that is brought in [plaintiff's] own name, is independent of the Plan, and could have been brought even if the Plan did not exist"); *compare with Miller v. Aetna Healthcare*, No. 01-2443, 2001 WL 1609681, at *1 (E.D. Pa. Dec. 12, 2001) (contract claim for benefits allegedly due under decedent's employee benefit plan was clearly preempted by ERISA); *Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 408-09 (S.D.N.Y. 2009) (fraud and fiduciary duty claims that "directly relate[d] to plaintiffs' employee benefits plans and allege[d] misconduct by defendants in the administration of those plans" were expressly preempted).

One of Merrill Lynch's arguments in its motion to dismiss is that Merrill Lynch complied with its duties under ERISA in effectuating the $3 million transaction, and therefore Curry cannot marshal a claim against Merrill Lynch under ERISA. *See* ECF No. 143 at 12-14. Given that the Court has found that ERISA does not preempt these state law claims, the Court will not address this argument.

### C. Todd's Agency Relationship with Merrill Lynch

Merrill Lynch argues that Todd was employed by a separate business entity, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and was not acting as Merrill Lynch's agent. As such, Merrill Lynch argues that Curry's entire claim against Merrill Lynch is misplaced.[38] Curry counters by arguing that he has alleged enough to make out a principal-agent relationship between Merrill Lynch and Todd, and that this Court should not address Merrill Lynch's qualms at this early motion-to-dismiss stage.[39]

As Merrill Lynch points out in its papers,[40] actual and/or apparent authority (each of which Curry alleges) must stem from the principal. *See Apex Fin. Corp. v. Decker*, 369 A.2d 483, 485 (Pa. 1976) ("express authority" is "that which is directly granted" by the principal; "implied authority" is authority "to do all that is proper, usual and necessary to the exercise of the authority actually granted" by the principal); *Azur v. Chase Bank, USA, Nat. Ass'n*, 601 F.3d 212, 221 (3d Cir. 2010) ("Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted.") (citation omitted).

---

[38] *See* ECF No. 143 at 9-10.

[39] *See* ECF No. 144 at 6-8.

[40] *See* ECF No. 148 at 5.

Here, Curry marshals some conclusory allegations about Merrill Lynch's grant of authority to Todd,[41] and makes some bare allegations implying a grant of authority from the fact that Merrill Lynch did not affirmatively deny that it had granted authority.[42] These allegations, standing alone, would be standing on shaky ground. But Curry also alleges two instances where the Court can infer that Merrill Lynch was directly responding to Todd in the course of effecting the $3 million transfer to AIF 1. First, Todd sent Curry several communications where he discussed selling Pension Plan assets to raise cash and thereby effectuate the transfer of Pension Plan funds from Merrill Lynch to AIF I.[43] After these communications, Merrill Lynch sold Pension Plan assets to raise cash for the purpose of investing Pension Plan funds into AIF I.[44] And second, Todd, working through Jumper, gave Curry instructions on implementing the wire transfer of Pension Plan funds from Merrill Lynch to AIF I.[45] After Todd gave Curry these

---

[41] ECF No. 136 at ¶ 7 ("Merrill Lynch expressly and/or impliedly provided Todd with actual authority…"); *id.* at ¶ 8 ("Merrill Lynch, through its words or conduct, provided Todd with apparent authority…"). The Court does not accept these legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

[42] *See, e.g.*, ECF No. 136 at ¶ 11 ("At no time did Merrill Lynch take any action or make any statement indicating that Todd did not have the authority to act on its behalf…").

[43] ECF No. 136 at ¶ 18.

[44] ECF No. 136 at ¶ 19.

[45] ECF No. 136 at ¶ 20.

instructions, Merrill Lynch then approved the wire transfer of Pension Plan funds from Merrill Lynch to AIF I.[46]

Curry's allegations about the effectuation of the $3 million transfer allow the Court to infer that Merrill Lynch was relying on Todd to act as its intermediary in dealing with Curry and setting up the $3 million transfer, with Todd working on Merrill Lynch's behalf. The Third Circuit has established a permissive standard for allowing agency claims to survive a motion to dismiss, observing that "discovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack." *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir. 2003) (quoting *Canavan v. Beneficial Finance Corp.*, 553 F.2d 860, 865 (3d Cir. 1977). Given this permissive standard, and the reasonable inference of Todd acting as Merrill Lynch's intermediary for purposes of the $3 million transfer, the Court finds that Curry has sufficiently alleged a principal-agent relationship between Merrill Lynch and Todd to survive Merrill Lynch's motion-to-dismiss attack.[47]

---

[46] ECF No. 136 at ¶ 21.

[47] *See Jurimex*, 65 F. App'x at 808; *see also Ninespot, Inc. v. Jupai Holdings Ltd.*, No. 1:18-CV-00144-RGA, 2019 WL 1650065, at *5 (D. Del. Apr. 17, 2019) (plaintiff had alleged enough evidence of agency relationship to withstand motion to dismiss; factual allegations were "sufficiently particular" when plaintiff alleged it was evident defendant was relying on agent, and agent acted as intermediary between plaintiff and defendant); *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. ( DE)*, No. CV 16-581-RGA-MPT, 2017 WL 896988, at *5 (D. Del. Mar. 7, 2017) (only "minimal" "evidence of agency required at the pleading stage"; court could reasonably infer and deduce parent's direction of and control over subsidiary from the pleadings); *New York Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co.*, No. CIV.A. 10-148 SRC, 2012 WL 209349, at *3 (D.N.J. Jan. 24, 2012) (plaintiff's

### D. The Specificity of Curry's Claims

As Curry is alleging misrepresentation, which is a form of "fraud or mistake," he "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff such as Curry must "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged. . . . To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal citations omitted). There is no specific requirement that a plaintiff allege the date, time, and/or place of the alleged fraud, but the plaintiff must "set[] forth the nature of the alleged misrepresentations" and "adequately describe[] the nature and subject of the alleged misrepresentation." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

The Court finds that Curry's claims are specific enough. Curry has "adequately described the nature and subject of the alleged misrepresentation": that the Pension Plan and Merrill Lynch had authorized the $3 million transfer of Pension Plan funds from Merrill Lynch to AIF I. Curry has described the nature

---

allegations of agency relationship survived motion to dismiss when plaintiff alleged "facts supporting the contention that [agent] solicited funds on behalf of [principal]").

and subject of background communications surrounding the transfer,[48] the mechanics of how Merrill Lynch, Curry, Jumper and Todd effectuated the transfer,[49] and the documents that helped expedite the transfer (account statements for the Pension Plan's holdings with Merrill Lynch)[50] and confirmed the transfer (the promissory note from AIF I to the Pension Plan).[51] Curry has also specified that Todd made the misrepresentation within a roughly 3.5-month period in 2015.[52] All of this "inject[s] precision or some measure of substantiation" into Curry's misrepresentation claim, which meets the standard set by Federal Rule of Civil Procedure 9(b).[53]

### E. Indemnification and Contribution

Curry also claims that Merrill Lynch should indemnify Curry against any verdict, judgment, settlement or other money award that Snow Shoe receives

---

[48] *See* ECF No. 136 at ¶¶ 23-25.

[49] *See* ECF No. 136 at ¶¶ 18-21, 35-36.

[50] *See* ECF No. 136 at ¶¶ 26-27.

[51] *See* ECF No. 136 at ¶ 36.

[52] January 1, 2015 to March 17, 2015, when Curry executed the promissory note. *See* ECF No. 136 at ¶¶ 12, 36.

[53] *See Fox Int'l Relations v. Fiserv Sec., Inc.*, 490 F. Supp. 2d 590, 600 (E.D. Pa. 2007), order corrected (May 7, 2007) (plaintiff "sufficiently identif[ied] the fraudulent schemes" to satisfy Rule 9(b)); *Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 381 (D.N.J. 2006) (plaintiffs satisfied Rule 9(b) even though they did not "explicitly identify a certain day upon which the alleged misrepresentations were made"); *Jairett v. First Montauk Sec. Corp.*, 203 F.R.D. 181, 187 (E.D. Pa. 2001) (claim was "not a model of perfect pleading" but did enough to place defendant "on notice of the precise misconduct with which they are charged"); *City of Harrisburg v. Bradford Tr. Co.*, 621 F. Supp. 463, 475 (M.D. Pa. 1985) (claim did enough to satisfy Rule 9(b) where it "set[] forth the months in which the[] statements were allegedly made" and "refer[red] to the content of the statements and that the [plaintiff] relied on them").

during this litigation.[54] In the alternative, Curry claims that Merrill Lynch should provide contribution to Curry in the event of a like money award for Snow Shoe.[55]

Under Pennsylvania law, indemnity is available only (1) "where there is an express contract to indemnify," or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts. *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 448 (3d Cir. 2000). "Contribution applies when a plaintiff and defendant are joint tortfeasors. . . . Contribution comes into force when one joint tortfeasor has discharged a common liability or paid more than its share of such liability, in which case the joint tortfeasor is entitled to reimbursement from the other tortfeasors to the extent that its payment exceeded its own liability." *Kirschbaum v. WRGSB Assocs.*, 243 F.3d 145, 156 (3d Cir. 2001).

Here, there was no express contract between Curry and Merrill Lynch for Merrill Lynch to indemnify Curry. So, for Merrill Lynch to be liable to Curry under theories of indemnification or of contribution, Merrill Lynch would need to be first liable to Snow Shoe in the first place. The Defined Benefit Plan Institutional Account Agreement ("Account Agreement") protects Merrill Lynch from that condition precedent liability.[56] The Account Agreement states that:

---

[54] ECF No. 136 at 48-50.

[55] ECF No. 136 at 48-50.

[56] Curry questions whether the Account Agreement is enforceable, because of Snow Shoe's claim that Jumper executed the Account Agreement without Snow Shoe's consent or

- Merrill Lynch "shall invest . . . as directed by [Jumper and other named fiduciaries and managers] . . . and shall have no discretionary control over, nor any other discretion regarding, the investment or reinvestment of any asset";[57]

- Merrill Lynch "shall have no liability for its . . . following [Jumper's] directions or failing to act in the absence of any such directions";[58]

- Merrill Lynch "shall have no liability for the acts or omissions of any person directing the investment or reinvestment of . . . assets";[59]

- Merrill Lynch "shall have no duty to inquire whether directions by [Snow Shoe, Jumper, and other named fiduciaries and managers] conform to the Plan, and [Merrill Lynch] shall be fully protected in relying on any such direction. . . ."[60]

- Snow Shoe "hereby indemnifies [Merrill Lynch] against, and shall hold [Merrill Lynch] harmless from, any and all loss, claims, liability, and expense . . . imposed upon [Merrill Lynch] or incurred by [Merrill Lynch] as a result of any acts taken . . . in accordance with the directions from [Jumper and other named fiduciaries and managers]."[61]

---

authorization. ECF No. 144 at 14 n. 1; ECF No. 95 at ¶ 29. That question seems to assert that the Account Agreement is a contract entered into as a result of fraudulent enforcement. These kinds of contracts are not automatically void but merely voidable. *See Gilmore v. Ne. Dodge Co., Inc.*, 420 A.2d 504, 506 (1980). "A contract secured by fraud is voidable only at the option of the injured party, who must act promptly on the discovery of the fraud or the right to rescind is waived." *Markowicz v. SWEPI LP*, 940 F. Supp. 2d 222, 229 (M.D. Pa. 2013) (citing *Sixsmith v. Martsolf*, 196 A.2d 662, 663 (Pa. 1964). Here, neither Snow Shoe nor Merrill Lynch have moved to rescind the Account Agreement. Thus, the Court's analysis treats the Account Agreement as valid and enforceable.

[57] *See* ECF No. 95-2 at p. 5.

[58] *See* ECF No. 95-2 at p. 6.

[59] *See* ECF No. 95-2 at p. 6.

[60] *See* ECF No. 95-2 at p. 7.

[61] *See* ECF No. 95-2 at p. 8.

These statements in the Account Agreement insulate Merrill Lynch from liability in Snow Shoe's original complaint against Jumper and the other investors. This insulation also protects Merrill Lynch against Curry's indemnification and contribution claims. *See Eagle-Picher Indus., Inc. v. United States*, 846 F.2d 888, 892 n.4 (3d Cir. 1988) ("[L]ike indemnity, the right to contribution is predicated on a third-party's direct liability to the plaintiff."); *id*. at 891 ("Pennsylvania law . . . bars third-party actions against tortfeasors who are not directly liable.")[62] The Court then must dismiss these claims.

## III. CONCLUSION

For the foregoing reasons, Merrill Lynch's motion to dismiss is granted. The Court dismisses Curry's indemnification and contribution claims with prejudice and dismisses Curry's intentional/negligent misrepresentation claim with leave to amend.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[62] *See also Wilson v. Am. Honda Motor Co.*, 693 F. Supp. 228, 232 (M.D. Pa. 1988) ("In the present case, it has already been determined that the third-party defendants are insulated by the exculpatory provision from any direct liability to plaintiffs. Consequently, the requisite predicate for [plaintiff's] claim for contribution/indemnity is missing.").